1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

JASON SCRUGGS,

8                          Plaintiff,                  Case No. C15-5670-JCC-BAT

9          v.                                          **REPORT AND**
                                                       **RECOMMENDATION**
10   CAROLYN W. COLVIN, Commissioner of
     Social Security,
11
                           Defendant.
12

13        Jason Scruggs seeks review of the denial of his Supplemental Security Income and

14   Disability Insurance Benefits applications.  He contends the ALJ erred by improperly (1)

15   rejecting the opinions of an examining doctor, two reviewing doctors, and a treating counselor,

16   (2) finding him not fully credible, and (3) formulating a residual functional capacity finding that

17   is not in vocational terms.  Dkt. 13.  For the reasons discussed below, the Court recommends the

18   case be **REVERSED** and **REMANDED** for further administrative proceedings under sentence

19   four of 42 U.S.C. § 405(g).

20                          **BACKGROUND AND ALJ DECISION**

21        Mr. Scruggs is currently 42 years old, has a high school education, and has worked as a

22   cabinet maker and cabinet assembler.  Tr. 59, 184, 239.  In December 2011, he applied for

23   benefits, alleging disability as of December 31, 2007.  Tr. 184, 186.  After his applications were

REPORT AND RECOMMENDATION - 1

1   denied initially and on reconsideration, the ALJ conducted a hearing and, on October 17, 2013,

2   issued a decision finding Mr. Scruggs not disabled.  Tr. 19-34.  Utilizing the five-step disability

3   evaluation process,[1] the ALJ found that Mr. Scruggs had not had not engaged in substantial

4   gainful activity for a period longer than 12 months after his alleged onset date; he had the

5   following severe impairments: depression, post-traumatic stress disorder (PTSD), and borderline

6   personality traits; and he did not have impairment or combination of impairments that met or

7   equaled the requirements of a listed impairment.[2]  Tr. 21-24.  The ALJ found that Mr. Scruggs

8   had the residual functional capacity to perform a full range of work at all exertional levels but

9   with the following nonexertional limitations: he is limited to unskilled and semiskilled work; he

10  can have no transactional interaction with the public and occasional interaction with a small

11  group of coworkers, but he would work better independently; and he can have no concentrated

12  exposure to noxious fumes and odors.  Tr. 26.  The ALJ found that Mr. Scruggs was unable to

13  perform any past relevant work, but he could perform jobs that exist in significant numbers in the

14  national economy.  Tr. 32-33.  The ALJ therefore found Mr. Scruggs not disabled.  Tr. 34.  As

15  the Appeals Council denied Mr. Scruggs's request for review, the ALJ's decision is the

16  Commissioner's final decision.  Tr. 1.

**DISCUSSION**

17

18  **A.    Medical evidence**

19      Mr. Scruggs argues that the ALJ erred by rejecting the opinions of examining doctor

20  Lawrence Moore, Ph.D., state agency consultants Diane Fligstein, Ph.D., and Steve Haney, MD,

21  and treating mental health counselor Alyssa Crea, LMHCA.  Dkt. 13 at 3-11.  In general, the

22  ALJ should give more weight to the opinion of a treating doctor than to that of a non-treating

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1  doctor, and more weight to the opinion of an examining doctor than to that of a non-examining

2  doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  The ALJ must give specific and

3  legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by

4  another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's

5  uncontradicted opinion.  *Id.* at 830-31.  An ALJ does this by setting out a detailed and thorough

6  summary of the facts and conflicting evidence, stating her interpretation of the facts and

7  evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The

8  ALJ must do more than offer her conclusions; she must also explain why her interpretation,

9  rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th

10  Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

11        1.     *Dr. Moore*

12        Dr. Moore examined Mr. Scruggs in October 2011.  He diagnosed major depressive

13  disorder, recurrent, severe without psychotic features, and assigned a Global Assessment of

14  Functioning (GAF) score of 45, indicating serious symptoms or a serious impairment in social,

15  occupational, or school functioning.  Tr. 374; *see* Am. Psychiatric Ass'n, Diagnostic and

16  Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994).  He opined that

17  Mr. Scruggs had mild limitations in his ability to perform simple tasks; moderate limitations in

18  his ability to perform complex tasks, learn new tasks, perform routine tasks without undue

19  supervision, and be aware of normal hazards and take precautions; marked limitations in his

20  ability to work in a setting with limited public contact and maintain appropriate behavior in a

21  work setting; and severe limitations in his ability to work in a setting with public contact.  Tr.

22  375.  In a narrative report, Dr. Moore detailed Mr. Scruggs's statements and the medical records

23  he reviewed.  Tr. 376-80.

1    At step two, the ALJ discussed Dr. Moore's report and stated that he gave the doctor's

2    opinions some weight, but "finds his opinions to be unsupported by the objective medical

3    evidence described more fully below." Tr. 23.  In evaluating Mr. Scruggs's residual functional

4    capacity, the ALJ summarized Dr. Moore's report in more detail.  Tr. 28.  The ALJ then noted

5    that GAF scores reflect a clinician's opinion of a claimant's overall functioning and that the

6    Commissioner has declined to endorse their use in disability programs, but made no finding with

7    respect to Dr. Moore's assignment of a GAF score to Mr. Scruggs.  *Id.*

8        Mr. Scruggs argues that the ALJ erred in assessing Dr. Moore's opinion because the

9    ALJ's explanation for rejecting the opinion was insufficient.  Dkt. 13 at 4.  The Court agrees.  An

10   ALJ may properly reject a doctor's opinion that is inconsistent with the record and not supported

11   by objective evidence.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).  But to

12   merely state that the opinion is not supported by sufficient objective findings "does not achieve

13   the level of specificity our prior cases have required, even when the objective factors are listed

14   seriatim." *Embrey*, 849 F.2d at 421-22.  Here, the ALJ did no more than state that the opinion

15   was unsupported by the objective medical evidence and that this evidence was described more

16   fully below.  The ALJ did not identify what evidence was inconsistent with Dr. Moore's opinion

17   or explain why his interpretation of the medical evidence, rather than Dr. Moore's, was correct.

18   Accordingly, the ALJ's sole reason for rejecting the opinion was not sufficiently specific.  The

19   ALJ erred by giving the opinion little weight.

20       2.    *State agency consultants*

21       In February 2012, Dr. Fligstein opined that Mr. Scruggs had moderate limitations in his

22   ability to maintain attention and concentration for extended periods, to perform activities within

23   a schedule, maintain regular attendance, and be punctual, and to complete a normal workday and

1    workweek without interruption.  Tr. 88.  She further opined that Mr. Scruggs had moderate

2    limitations in his ability to interact appropriately with the general public and in his ability to

3    respond appropriately to changes in the work setting, and that he would benefit from a

4    predictable work environment to reduce stress.  Tr. 89.  In June 2012, Dr. Haney reviewed the

5    record and expressed largely the same opinions as Dr. Fligstein, opining in addition that Mr.

6    Scruggs had moderate limitations in his ability to deal with the demands and changes of

7    competitive work.  Tr. 110-12.

8          The ALJ gave great weight to these opinions, finding that state agency consultants are

9    highly qualified experts in the evaluation of medical issues in disability claims, the doctors

10   supported their opinions with medically accepted clinical and diagnostic techniques, and their

11   opinions were not inconsistent with other substantial evidence.  Tr. 29.

12         Mr. Scruggs argues that the ALJ failed to incorporate or even discuss all the limitations

13   the consulting doctors included in their opinions.  Dkt. 13 at 6.  It is the role of the ALJ to

14   interpret and synthesize the evidence.  *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

15   2002).  The ALJ may give great weight to an opinion and yet not adopt it word for word, or

16   discuss each and every box the doctor checked.  The Court declines to find error in the ALJ's

17   failure to discuss each and every point in the doctors' opinions.

18         However, Mr. Scruggs also points out that the ALJ misstated one of the limitations the

19   doctors opined.  Dkt. 13 at 7.  When asked to provide a narrative assessment of Mr. Scruggs's

20   concentration and persistence limitations, Dr. Fligstein and Dr. Haney opined that Mr. Scruggs

21   could "concentrate for up to 2 hrs *w/occ* lapses due to MH symptoms."  Tr. 88, 111 (emphasis

22   added).  The ALJ stated that the doctors opined Mr. Scruggs could "concentrate for up to two

23   hours *without* lapses due to his symptoms."  Tr. 29 (emphasis added).  It appears that the ALJ

misread the abbreviation "w/occ" as "without," rather than as "with occasional."  This error undermines the ALJ's assessment of the opinions.  The ALJ did not address the effect of these lapses of concentration on Mr. Scruggs's ability to work.  Accordingly, the Court finds that the ALJ erred in evaluating the opinions.

     *3.*     *Ms. Crea*

In September 2013, Ms. Crea, who had been Mr. Scruggs's therapist since 2010, completed a questionnaire in which she opined that Mr. Scruggs's depressive disorder met the requirements for Listing 12.04 with marked impairment in concentration, persistence, or pace, extreme impairment in social functioning, and mild impairment in activities of daily living.  Tr. 585-86.  She further opined that with respect to his mental residual functional capacity, Mr. Scruggs had marked limitations in his ability to maintain attention and concentration, work in coordination or proximity to others, interact appropriately with the general public, accept instructions and respond to criticism from supervisors, and get along with coworkers.  Tr. 587.  She opined that Mr. Scruggs had moderate limitations in his ability to perform activities within a schedule, maintain attendance, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from his symptoms, maintain socially appropriate behavior, and respond appropriately to changes in the workplace.  *Id.*  She opined that he would need to take unscheduled breaks due to exacerbation of anger from interactions with others or criticism from supervisors, but did not believe he would miss two full days per month due to his impairments.  Tr. 587-88.

At step three, the ALJ gave Ms. Crea's opinion little weight, finding that she relied quite heavily on Mr. Scruggs's subjective report of symptoms and limitations, her opinion was quite conclusory with very little explanation of the evidence she relied on, it was possible that she

1  expressed her opinion in an effort to assist Mr. Scruggs or to avoid tension with him, especially

2  given the fact that her opinion departed substantially from the rest of the evidence, it was not

3  clear Ms. Crea was familiar with the definition of "extreme" and "marked" contained in the

4  Social Security Act and regulations, and Ms. Crea was not an acceptable medical source.  Tr. 25.

5  The ALJ relied on the same reasons to give little weight to Ms. Crea's opinion when evaluating

6  Mr. Scruggs's residual functional capacity.  Tr. 30.

7        Mr. Scruggs argues that the ALJ's reasons are neither germane nor rooted in the record.

8  Dkt. 13 at 8.  Mental health counselors are not acceptable medical sources who can give medical

9  opinions.  *See* 20 C.F.R. § 404.1513(a).  The ALJ may evaluate opinions of other medical

10  sources using the same factors used to evaluate medical opinions of acceptable medical sources.

11  Social Security Ruling 06-03p; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).  But the ALJ may

12  give less weight to the opinions of a non-acceptable medical source than to that of an acceptable

13  medical source.  SSR 06-03p.  The ALJ must give at least one germane reason for rejecting

14  opinions from other sources that are not acceptable medical sources.  *Dodrill v. Shalala*, 12 F.3d

15  915, 919 (9th Cir. 1993).

16        Mr. Scruggs argues that the fact that Ms. Crea is not an acceptable medical source is

17  irrelevant and not a basis to disregard her opinion.  Dkt. 13 at 8.  But an ALJ may give less

18  weight to an opinion of a non-acceptable medical source.  SSR 06-03p.  Ms. Crea's status as a

19  non-acceptable medical source was in fact relevant and the ALJ did not err by considering it

20  when evaluating the opinion.

21        Mr. Scruggs argues that it was disingenuous for the ALJ to discount Ms. Crea's opinion

22  on the basis that it was not clear that she was familiar with the definition of "extreme" and

23  "marked" in the Social Security Act and regulations.  Dkt. 13 at 9.  Mr. Scruggs argues that the

REPORT AND RECOMMENDATION - 7

regulations do not precisely define these terms and one could easily infer that Ms. Crea understood the terms based on their commonsense definitions. *Id.* at 9-10. But the amount of understanding of disability programs and their evidentiary requirements that a medical source has is a relevant factor for the ALJ to consider when weighing an opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). The form Ms. Crea completed contains no definitions of these terms and, as the ALJ noted, Ms. Crea's opinion departed substantially from the other opinions in the record. While it may be possible to infer that Ms. Crea understood the terms as Ms. Scruggs suggests, the ALJ's contrary inference that she lacked such an understanding was a rational inference and, therefore, the Court must accept it. *Thomas*, 278 F.3d at 954. This was a germane reason to give the opinion little weight.

Mr. Scruggs argues that the ALJ's finding that Ms. Crea's opinion is conclusory and lacking explanation is false, arguing that Ms. Crea used all space provided to explain her opinion and that her opinion was consistent with her treatment notes. Dkt. 13 at 10. An ALJ may give less weight to a medical opinion that is brief, conclusory, and inadequately supported by medical records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Ms. Crea's opinion did not refer to her treatment records or other supporting evidence. The fact that Ms. Crea used all the space provided on the form does not negate a finding that her opinion was conclusory. Although Mr. Scruggs offers an alternative interpretation of the thoroughness of Ms. Crea's opinion, again, the ALJ's finding was rational and the Court must accept it. *Thomas*, 278 F.3d at 954. This was a germane reason to give the opinion little weight.

Mr. Scruggs argues that the ALJ erred by finding that Ms. Crea relied heavily on Mr. Scruggs's subjective report of symptoms and limitations and by relying on this reason to reject the opinion. Dkt. 13 at 10. An ALJ may give less weight to an opinion that is based to a large

1    extent on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti*

2    *v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  As discussed below, the ALJ properly

3    discounted Mr. Scruggs's credibility.  Ms. Crea stated she relied on Mr. Scruggs's reports of his

4    symptoms, activities, and employment and academic history.  Tr. 587-88.  She does not refer to

5    any clinical or diagnostic findings.  Ms. Crea's reliance on Mr. Scruggs's self-reports was a

6    germane reason to give the opinion little weight.

7         Finally, Mr. Scruggs argues that the ALJ's discussion of the possibility that Ms. Crea was

8    attempting to assist her patient or to avoid tension with him was mere speculation.  Dkt. 13 at 9.

9    The Court agrees.  An ALJ "'may not assume that doctors routinely lie in order to help their

10   patients collect disability benefits,'" although they may rely on actual evidence of such

11   improprieties.  *Lester*, 81 F.3d at 832 (quoting *Ratto v. Secretary*, 839 F. Supp. 1415, 1426 (D.

12   Or. 1993)).  The ALJ pointed to no evidence of such improprieties in this case.  Accordingly, this

13   was not a germane reason to reject Ms. Crea's opinion.

14        Although the ALJ relied on one invalid reason to reject Ms. Crea's opinion, the ALJ also

15   relied on several germane reasons, rendering this error was harmless.  *See Carmickle v. Comm'r,*

16   *Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).  The ALJ validly decided gave little

17   weight to Ms. Crea's opinion.

18        **B.     Mr. Scruggs's credibility**

19        Mr. Scruggs argues that the ALJ erred in finding him not fully credible.  Dkt. 13 at 13.

20   The ALJ did not find that Mr. Scruggs was malingering. Thus, the ALJ was required to provide

21   clear and convincing reasons to reject his testimony.  *See Vertigan v. Halter*, 260 F.3d 1044,

22   1049 (9th Cir. 2001).  An ALJ does this by making specific findings supported by substantial

23   evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is not

credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d 834.  The ALJ gave several reasons for finding Mr. Scruggs not fully credible, including lack of support from the medical records, daily activities that were not limited to the extent one would expect, his use of medications, his work activity after the alleged onset date, and the fact that he stopped working for reasons unrelated to a disabling impairment and wanted to work in a job that he enjoyed doing.  Tr. 30-31.

### 1.   Medical records

Mr. Scruggs challenges the ALJ's finding that the medical records did not support his allegations.  Although lack of objective medical evidence cannot be the sole reason an ALJ discounts subjective complaints, it is a relevant factor that the ALJ can consider in his credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Mr. Scruggs argues that the ALJ failed to specify what alleged limitations the ALJ found unsupported or what records contradict the allegations.  Dkt. 13 at 14.  The Court agrees.  The ALJ stated only that "as discussed above," the record shows that Mr. Scruggs was capable of a range of unskilled work at the medium level and that his allegations are unsupported by the record.  Tr. 30.  This is not the kind of specific finding supported by substantial evidence required to reject a claimant's allegations.  Accordingly, this was not a valid reason to find Mr. Scruggs not fully credible.

### 2.   Daily activities

Mr. Scruggs challenges the ALJ's finding that his daily activities are not limited to the extent one would expect given his complaints.  Dkt. 13 at 15.  Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse

REPORT AND RECOMMENDATION - 10

credibility determination.  *Orn*, 495 F.3d at 639.

The ALJ noted that even Ms. Crea, who opined extreme and marked limitations in other areas, opined that Mr. Scruggs had only mild limitations in his activities of daily living.  Tr. 30.  But the ALJ did not explain how mild limitations in activities of daily living contradicted Mr. Scruggs's testimony or were transferrable to a work setting.  In his hearing testimony and written function report, Mr. Scruggs stated that he managed personal care, prepared simple meals, did his laundry and other household chores, drove a car, and used public transportation.  Tr. 56-57, 256-58.  These reports are not inconsistent with Ms. Crea's opinion, nor do they show daily activities that are transferrable to a work setting.  The mere fact that Mr. Scruggs has only mild limitations in activities of daily living does not undermine his credibility.  *See Fair*, 885 F.2d at 603 (claimant need not be "utterly incapacitated" to be disabled).

The ALJ also noted that Mr. Scruggs had been taking community college classes and hoped to earn enough credits to obtain an AA degree and then transfer to a university to study mechanical engineering.  Tr. 30.  The ALJ found that Mr. Scruggs reported that he was stressed and depressed about his performance in school and that he lacked concentration, but treatment notes suggested that he slacked off, spent time on other projects, and allowed financial worries to interfere with his studies.  *Id.*  Mr. Scruggs argues that the record shows he was having difficulty in his college classes and that his mere enrollment in classes does not contradict his allegations of disability.  Dkt. 13 at 15.  Although Mr. Scruggs points to evidence that he was struggling in his classes, the ALJ could rationally conclude that the fact that he maintained full-time enrollment in community college classes, and the evidence that he struggled for reasons other than his impairments, were inconsistent with a claim of complete disability.  Accordingly, the Court must accept the ALJ's interpretation.  *Thomas*, 278 F.3d at 954.  Mr. Scruggs's enrollment

1    in college classes was a valid reason to question his credibility.

2          *3.      Use of medications*

3          Mr. Scruggs challenges the ALJ's finding that Mr. Scruggs's use of medications did not

4    suggest an impairment that is more limiting than the ALJ found, arguing that the ALJ failed to

5    explain how Mr. Scruggs's use of medication affected his credibility.  Dkt. 13 at 16-17.  As

6    support for this finding, the ALJ noted only that Mr. Scruggs indicated that he took Celexa

7    regularly.  Tr. 30.  As Mr. Scruggs points out, the ALJ does not state whether he would expect

8    there to be more treatment, less treatment, or different treatment.  Dkt. 13 at 16-17.  The

9    Commissioner defends this finding as an inference that Mr. Scruggs sought only minimal or

10   conservative treatment.  Dkt. 15 at 6.  But the ALJ himself did not characterize Mr. Scruggs's

11   use of medications as conservative.  The Commissioner's proffered explanation is therefore an

12   improper post hoc rationalization that this Court cannot accept.  *See Bray v. Comm'r*, 554 F.3d

13   1219, 1225-26 (9th Cir. 2009).  The ALJ's finding was vague and lacked explanation.  The fact

14   that Mr. Scruggs took medication to treat his depression, without more, does not undermine his

15   credibility.  This was not a valid reason to question his credibility.

16         *4.      Work after alleged onset date and reasons for stopping work*

17         Mr. Scruggs challenges the ALJ's finding that Mr. Scruggs's work activity after the

18   alleged onset date and the fact that he stopped working for reasons other than disability

19   undermined his credibility.  Dkt. 13 at 17-18.  The ALJ found that although Mr. Scruggs's work

20   activity after the alleged onset date did not rise to the level of substantial gainful activity, it

21   indicated that his daily activities were greater than he reported.  Tr. 31.  The ALJ found that Mr.

22   Scruggs testified that he left his jobs for reasons other than his impairments; the ALJ found

23   specifically that Mr. Scruggs testified that he was fired from his last job after arguing with his

1    manager.  *Id.*  The ALJ found that there was no evidence of significant deterioration of Mr.

2    Scruggs's medical condition over time, leading to an inference that his impairments would not

3    prevent the performance of all work, since he could work despite those impairments in the past.

4    *Id.*  And the ALJ noted Mr. Scruggs's testimony that he disliked his past jobs and decided to

5    attend school to be able to work at something he enjoyed doing.  *Id.*

6           Mr. Scruggs argues that his ability to work for short periods of time only to stop due to

7    his impairments actually serves to enhance his credibility, as it shows he was trying to do his best

8    and was limited by his conditions.  Dkt. 13 at 17.  He further asserts that the fact that he wanted a

9    better job does not mean he was actually ever going to be able to achieve that goal.  But, as with

10   his assertions about his school attendance above, Mr. Scruggs merely proposes an alternative,

11   more favorable interpretation of the evidence.  The ALJ rationally concluded that Mr. Scruggs's

12   ability to work after his alleged onset date, the fact that he left his jobs for reasons other than his

13   impairments, and the fact that he enrolled in school in order to work at a job he enjoyed all

14   undermined Mr. Scruggs's claims that his impairments were disabling.  Accordingly, the Court

15   must accept the ALJ's interpretation.  *Thomas*, 278 F.3d at 954.  These were all valid reasons to

16   find him not credible.

17          *5.      Harmless error*

18          The ALJ provided both valid and invalid reasons to find Mr. Scruggs not fully credible.

19   The inclusion of improper reasons among other proper reasons to discount a claimant's

20   credibility does not "'negate the validity'" of the ALJ's credibility determination.  *Carmickle*,

21   533 F.3d at 1163 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197) (9th Cir.

22   2004)).  Here, the remaining valid reasons provide substantial evidence to support the ALJ's

23   adverse credibility finding.  The ALJ's credibility finding therefore should not be disturbed.

1    **C.    Remand for further proceedings**

2        Mr. Scruggs asks the Court to remand this case for an award of benefits.  The Court may

3    remand for an award of benefits where (1) the record has been fully developed and further

4    administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide

5    legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion,

6    and (3) if the improperly discredited evidence were credited as true, the ALJ would be required

7    to find the claimant disabled on remand.  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

8    Courts have flexibility in applying this rule, and may instead remand for further proceedings

9    where the record as a whole "creates serious doubt that a claimant is, in fact, disabled."  *Id.* at

10   1021.  The Court finds that it is not clear that the ALJ would be required to find Mr. Scruggs

11   disabled if the improperly discredited evidence was credited as true.  Rather, a reevaluation of

12   the improperly rejected evidence is warranted.  Accordingly, the Court recommends that this

13   case be remanded for further administrative proceedings.

14       Because the Court recommends remanding for further proceedings, and because the ALJ

15   will necessarily reevaluate Mr. Scruggs's residual functional capacity on remand, the Court need

16   not address Mr. Scruggs's argument that the ALJ's residual functional capacity finding was not

17   in vocational terms.

18                                    **CONCLUSION**

19       For the foregoing reasons, the Court recommends that the Commissioner's decision be

20   **REVERSED** and the case be **REMANDED** for further administrative proceedings under

21   sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reevaluate the opinions of Dr.

22   Moore and the state agency reviewing doctors.  The ALJ should also further develop the record

23   and redo the five-step disability process as appropriate.

REPORT AND RECOMMENDATION - 14

1    A proposed order accompanies this Report and Recommendation.  Any objection to this

2  Report and Recommendation must be filed and served no later than **April 11, 2016**.  If no

3  objections are filed, the Clerk shall note the matter as ready for the Court's consideration on that

4  date.  If objections are filed, any response is due within 14 days after being served with the

5  objections.  A party filing an objection must note the matter for the Court's consideration 14

6  days from the date the objection is filed and served.  Objections and responses shall not exceed

7  ten pages.  The failure to timely object may affect the right to appeal.

8    DATED this 28th day of March, 2016.

9

10   BRIAN A. TSUCHIDA
    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 15